**SO ORDERED.**

**SIGNED this 15 day of May, 2007.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____


NOT FOR PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MILK PALACE DAIRY, LLC., | ) | Case No. 03-16743 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MILK PALACE DAIRY, LLC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05-5821 |
| | ) | |
| L & N PUMP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Milk Palace Dairy, LLC ("Milk Palace"), as debtor-in-possession, filed this adversary

1

proceeding to recover an alleged preferential transfer it made to defendant L & N Pump, Inc. ("L&N Pump") under 11 U.S.C. § 547(b).[1] L&N Pump asserts the "ordinary course" affirmative defense under § 547(c)(2).

The parties submitted stipulations of fact within the pretrial order.[2] The case was tried on March 27, 2007. Milk Palace appeared by W. Thomas Gilman of Redmond & Nazar, L.L.P. L&N Pump appeared by Timothy J. King of Speth & King. After hearing testimony and receiving exhibits, the Court is now ready to rule and makes its findings of facts and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) over which the Court has subject matter jurisdiction.[3]

Findings of Fact

Based on the stipulations and the evidence presented at trial, the Court finds the following. Milk Palace filed for Chapter 11 relief in this Court on December 15, 2003. L&N Pump serviced pumps and equipment for Milk Palace. Typically, L&N Pump would issue invoices for services rendered in a month at the beginning of the following month. Similarly, it would issue invoices for parts sold at the beginning of the following month. For example, charges for services or parts incurred on September 2 were invoiced and sent out at the beginning of October.

---

[1] Subsequent statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq*. unless otherwise noted.

[2] Dkt. 14.

[3] 28 U.S.C. § 157(b)(1) and § 1334(b).

2

L&N Pump's invoices referred to a finance charge being imposed, but they did not specify when. L&N Pump's representative testified that, in practice, finance charges were imposed if the invoice was not paid by the end of the month. So if Milk Palace failed to pay the October invoice by the end of October, in November, a finance charge would be assessed for nonpayment or underpayment of the October invoice. A review of exhibit D bears this out, there being several times in the three-year period in which debtor failed to make a payment before the end of the month and then paid the finance charge.[4]

At issue is the payment of three invoices: (1) invoice no. 14056 dated August 29, 2003 for $7,470.51, (2) invoice no. 14057 dated August 29, 2003 for $3,477.53, and (3) invoice no. 13915 dated August 30, 2003 for $3,026.67.[5] Presumably, these invoices were sent out at the beginning of September 2003. Upon not receiving a payment at the end of September, on October 1, 2003, L&N Pump imposed a finance charge of $279.49 for "August nonpayment," consistent with its prior practice. On October 21, 2003, Milk Palace paid L&N Pump $10,000 by check. This payment did not pay the three invoices and finance charge in full.

Conclusions of Law

Milk Palace seeks to recover the $10,000 payment as a preferential transfer under 11 U.S.C. § 547(b). By stipulating to the elements of § 547(b), L&N Pump concedes that the

---

[4] Defendant's Exhibit D is a summary of the transactions between Milk Palace and L&N Pump over a period of three years, from August 2000 through December 2003, when plaintiff filed bankruptcy.

[5] See Plaintiff's Exhibits 2-4. The Court notes that according to L&N Pump's accounts receivable records, invoice no. 13915 was dated September 2, 2003. See Defendant's Exhibits A and D. The invoice itself, however, was dated August 30, 2003. The Court considers the invoice the best evidence and will use August 30, 2003 as the operative date in its analysis.

3

payment was a preference, but relies on the "ordinary course" exception provided for under § 547(c)(2) as a defense.

Section 547(c)(2) provides that the trustee may not avoid a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –

    (A)    made in the ordinary course of business or financial affairs of the debtor and transferee; and
    (B)    made according to ordinary business terms.[6]

L&N Pump, as the recipient of the payment, has the burden of proving by a preponderance of the evidence, that the payment fall within § 547(c)(2).

Many courts recognize that this defense has both a subjective and an objective test.[7] The Tenth Circuit Bankruptcy Appellate Panel has held that the subjective test examines whether the transfers at issue were "ordinary as between the parties" and the objective test examines whether the transfers were "ordinary in the industry."[8] A transaction must meet both tests in order to qualify as an exception. A defense under § 547(c)(2) should be narrowly construed.[9]

Courts consider four primary factors to determine if payments are ordinary between the parties as required under the subjective test: (1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices;

---

[6] 11 U.S.C. § 547(c)(2).

[7] *See* William L. Norton and William L. Norton, Jr*., NORTON BANKRUPTCY LAW AND PRACTICE, 2ND ED.*, § 57:20 (2005).

[8] *Payne v. Clarendon Nat'l Ins. Co. ( In re Sunset Sales, Inc.)*, 220 B.R. 1005, 1020 (10th Cir. BAP 1998).

[9] *Id.*

4

(3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made.[10] These factors are typically considered by comparing pre-preference period transfers with preference period transfers.[11] In the absence of any prior transactions, courts typically look to see if the debtor complied with the payment terms of its contract.[12] Late payments are typically not "ordinary," unless the creditor establishes that a pattern of late payments was ordinary between the parties.[13] In interpreting the objective test, the Tenth Circuit has held that "ordinary business terms" are terms used in "'normal financing relations:' the kinds of terms that creditors and debtors use in ordinary circumstances, when debtors are healthy."[14]

The parties were engaged in business for more than three years and, in 2002, the debtor began to "ride" the creditor by failing to make payments by month's end and paying the finance charge. This first occurred in March of 2002 where invoices for February (charges incurred in January, but not billed until February) were not paid til March 15. Milk Palace's payment on July 16, 2002 included two finance charges for nonpayment of May invoices (charges incurred in April, but not billed until May). Again, in August of 2003, Milk Palace's payment included finance charges for underpayment of July invoices (charges incurred in June, but not billed until July). It appears that L&N Pump continued to do business with Milk Palace essentially without

---

[10] *Id.* at 1021-1022.

[11] *Id.* at 1022 (citations omitted).

[12] *Id.*

[13] *Id.*

[14] *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir. 1993).

5

regard to its currency on payments, whether in good times or bad. As many of the witnesses in these Milk Palace cases testified, payment deadlines are somewhat relaxed between agricultural vendors and farmers due to the cyclical and somewhat inconsistent pattern with which farmers receive their revenues.

In short, this transfer appears no more out of the ordinary course than those in 2002 and in early 2003. It is clear that L&N Pump granted Milk Palace considerable payment latitude. It is also clear that many farm vendors have a similarly liberal view of enforcing payment terms against their farmer customers.

The Court therefore concludes that the $10,000 payment was made in the ordinary course of business between these two parties and, to some degree, is consistent with the nature or the parties' prior dealings. L&N Pump has sustained its burden of proving the ordinary course defense. Thus, L&N Pump is entitled to the defense of § 547(c)(2).

Judgment should therefore be entered for defendant L&N Pump on the complaint, costs to Milk Palace. A judgment on decision will issue this day.

# # #

6